**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| ESTATE OF JAMES KEAN, EARNEST KEAN, ALVA MARSH, WARREN MARSH, JEWEL, MARSH MOOLENAAR, PATRICIA LOONEY, individually and as a guardian for IRMA MARSH CALIGIONE, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | CIVIL NO. 1998/176 |
| THE NATIONAL PARK SERVICE AND THE UNITED STATES OF AMERICA, THE TRUST FOR PUBLIC LAND, OUIDA NELSON, JOSEPH ADLER, VALENTINO NELSON, and NELINDA NELSON, | ) ) ) ) ) ) | ACTION FOR PARTITION OF LIFE ESTATE AND REMAINDER |
| Defendants. | ) ) | |
| UNITED STATES OF AMERICA (NATIONAL PARK SERVICE), | ) ) ) ) | QUIET TITLE ACTION |
| Third-party Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| THE TRUST FOR PUBLIC LAND, | ) ) ) | |
| Third-party Defendant. | ) ) | |

**REPORT AND RECOMMENDATION**

This matter came before the Honorable Geoffrey W. Barnard, United States Magistrate

Judge, on June 27, 2007, for the final hearing on the Referees' Report dated June 12, 2007, ("the

report")[1] for the partition of Parcel Remainder 3A Estate Abraham's Fancy, St. John, Virgin

---

[1] The Referees Report dated June 12, 2007 and valuation dated June 17, 2007, are attached as Exhibit "A".

Kean, et al  v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 2 of 11

Islands ("the property"), the estate of the late Harvey Monroe Marsh ("Mr. Marsh"), consisting of

± 419.5acres of land to be partitioned between three interests:  the National Park, the Trust for

Public Land and the Estate of Douglas Nelson.  Present were the Referees, Ms. Elissa Rock

Runyon, Mr. Raymond Thomas, and Andrew Capdeville, Esq., ("the Referees"); Nelinda and

Valentino Nelson ("the Nelsons"), *pro se*; the United States of America on behalf of the National

Park Service ("National Park"), represented by Joycelyn Hewlett, Esq., Assistant United States

Attorney and The Trust for Public Land ("the Trust"), represented by A. Jeffrey Weiss, Esq.  and

Jay Isherwood, Esq.  The Court heard testimony on behalf of the Trust from Mr. H. Lindwood

Gilbert, Jr., a  Florida State Certified General Appraiser, temporarily licensed in the Virgin

Islands and from Mr. Harry Gauriloff, a licensed surveyor in the Virgin Islands, who performed a

perimeter survey of the property.

        The salient facts of this partition action and the basis for this Report and

Recommendation are as follows: By deed dated March 27, 1961, Harvey Monroe Marsh,

disposed of the property by reserving  life estates for himself and for his children, and upon the

death of the last life tenant, the remainder to his grandchildren alive at the time of his death.  At

the time of his death on December 1, 1971, Mr. Marsh had eleven living grandchildren, James

and Ernest Kean; Jewel, Alva and Warren Marsh; Ronald, Yvonne and Carolyn Ortiz; Douglas

Nelson; Patricia Ann Caligione and Joseph Adler.  Accordingly, as provided by the deed, the

property is to be partitioned into eleven shares representing an interest of each of the eleven

grandchildren.  However, the National Park acquired the interest of three of Mr. Marsh's

Kean, et al  v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 3 of 11

grandchildren, the Trust acquired the interest of seven of the grandchildren and Nelinda and

Valentino Nelson are in the process of inheriting the interest of Douglas Nelson. This partition

action was removed to this Court on October 14, 1998.

By Order dated November 28, 2005, Ms. Elissa Runyon, Mr. Raymond Thomas and

Andrew Capdeville, Esq. were appointed Referees and charged with the responsibility of

determining whether the property could be partitioned and, if so, to equitably partition the

property pursuant to 28 V.I.C. § 459.  After numerous meetings and intense negotiations with the

parties, the Referees submitted their final report and recommendation to the Court dated June 12,

2007.

It should be noted that the Referees possesses an extraordinary degree of knowledge and

expertise in real estate matters and in the special circumstances of St. John.  Their mission

extended beyond the mere economic partition of the property and indeed required consideration

of  the protection of the development of the property for future generations of Virgin Islanders.

Virgin Islands law on partition is set forth in title 28 Virgin Islands Code, chapter 21.

Section 459 reads as follows:

> In making the partition the referees shall divide the property and
> allot the several portions thereof to the respective parties, quality
> and quantity relatively considered, according to the respective
> rights of the parties as determined by the court, designating the
> several portions by proper landmarks, and may employ a surveyor
> with the necessary assistants to aid them therein.  The referees shall
> make a report of their proceedings specifying therein the manner of
> executing their trust, describing the property divided and the shares
> allotted to each party, with a particular description of each share.

Kean, et al v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 4 of 11

The Referees in their analysis intelligently divided the entire property into zones and ascribed certain values to each zone, then assigned areas within the zones to each partitioner. It should be noted that in the process of negotiation, the partitioners agreed in some instances to accept property of lesser value in order to protect ecologically sensitive areas, thus accounting in some respects for the adjusted values of the Nelsons' allocation. The Nelsons also received areas of historical and cultural significance to their family through the negotiating process.

Title 28 Virgin Islands Code, section 458 provides for the sale of the property if it is determined by the evidence that partition of the property would prejudice the owners. This is not the case here; the Referees, the parties and the Court agree that the property can be successfully partitioned.

In the report, the Referees propose to partition the property among the interests as shown on the map attached as Exhibit "B":

1. to the National Park, ± 114.40 acres, or three elevenths.

2. to the Trust, ± 266.82 acres, or seven elevenths.

3. to the Nelsons, ±38.14 acres, or one eleventh, with an approximately total value of $5,699,860, consisting of the following:

(a) A 1 acre parcel that is situated along the beach and encompasses Ms. Leila Marsh's cottage. According to the Referees' June 17, 2007[2] valuation, this property is relatively flat, and adjoins the beach. The Referees value this parcel at approximately $1,000,000. (See

_____

[2] The Referees prepared a valuation report dated June 17, 2007, to establish a value on the property allocated to the Nelsons.

Kean, et al  v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 5 of 11

area highlighted as N1, on survey map dated June 13, 2007, attached as Exhibit "B".)

(b) A 3 acre parcel located adjacent to the wetlands.  Again, according to the June 17,

2007 valuation, the parcel is relatively flat and is close to the beach.  The upper portion is stated

to have a limited view, if any,  and the lower portion does not have a view.  This parcel is also

stated to be located in a flood zone.   The Referees value this parcel at approximately $720,000.

(See area highlighted as N2, on survey map dated June 13, 2007, attached as Exhibit "B".)

(c) A 7.5 acre parcel adjacent to other landlocked property not subject to this partition

action, but owned by the Nelson Estate.  It is noted that most of the property has good views and

provides access that will dramatically increase the value of the landlocked property owned by the

Nelsons. Some of the property is steep, making road construction costly.  This property is located

at the corner of Centerline and Northshore roads. The Referees value this  property at

approximately $2,000,000.   (See area highlighted as N4 on survey map dated June 13, 2007,

attached as Exhibit "B".)

(d)  A 3.1 acre ridge parcel situated along the Mamey Peak/Centerline Road.  The

Referees reported that this parcel has good access, good views and mixed terrain and is valued at

approximately $1,000,000.  (This parcel is included in the area referred to as N3.)

(e)  Finally, a 26.33 acre parcel, which includes the 3.1 acre ridge parcel discussed in (d)

above. The report  indicates that some of the parcel has good views, has some steep areas and

development would be expensive.  (See the highlighted area consisting of a 11.3 acre parcel, an

8.0 acre parcel and a 7.5 acre parcel, not referenced on the map as N3, but referred to by the

Kean, et al  v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 6 of 11

Parties as N3, on the survey map dated June 13, 2007, attached as Exhibit "B".)

Summarizing the responses to the Referees conclusions, the National Park in general supports the Referees' proposal, the Nelsons contend that they received too little, and the Trust complains that the Nelsons were awarded too much.  The Court believes that the Referees' recommendations are correct.

By pleadings dated June 25, 2007 and July 17, 2007[3], the Nelsons filed their objections to the Referees' report.  First, the Nelsons argue that they are the only  heirs who did not sell their interest to the National Park or to the Trust.  The Nelsons further argue that the Trust has reserved for each of the heirs that has agreed to sell his interest to the Trust,  six acres of prime land and $3,000,000 in cash. Second, the Nelsons incorrectly argue that the Park and the Trust received first choice of the property and have taken a "you take what we give you" attitude toward their 1/11th share.  They further argue that the Park's share of Upper Mamey Peak has 360 degree views and includes three prime knolls with flat topography.  Thirdly, the Nelsons argue that the map used to delineate the boundaries of the property does not accurately show the division between the Park's proposed share of the property and the Trust's share.  Finally, the Nelsons argue that the 26.33 parcel that the Referees proposes to allocate  to them is very steep and has two major guts running through it; and consequently, it is not desirable for development and that they anticipate that any future attempt by them to develop this property would be met by resistance from the Trust and the Park because any runoff from the guts would go directly into a

_____

[3] Pleadings attached as Exhibit "C".

Kean, et al  v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 7 of 11

natural reservoir at the base of the mountain. (See, "The Nelsons' Final Objection to the Referees

Final Proposal" dated June 22, 2007 and their July 17, 2007 pleading,  attached collectively as

Exhibit "C").   Essentially, the Nelsons' principal contention is that the Trust and the National

Park have been awarded  a disproportionate share of the prime developable land and the Nelsons

have been assigned a disproportionate share of the steep,  undesirable and undevelopable land.

Their objections, however, are anecdotal and inconsistent with the division recommended by the

Referees, which awarded them much of what they requested.  Furthermore, they do not rely on

data other than that developed by the Referees.

        The Trust also filed objections to the Referees' report by memorandum dated June

22, 2007, and by letter brief dated July 2, 2007.[4]  The Trust's primary objection is that the

Nelsons are receiving more than their equitable 1/11th share of the property.  In that the property

allotted to them is valued at $6,384,860 according to the  June 17, 2007, valuation prepared by

the Referees.[5]  Whereas, based on the value assigned to the property by the Referees, each

remaindermen should receive property valued at approximately $4,863,636.33.[6]  Mr. Gilbert,[7] an

---

[4]Memorandum and letter brief attached as Exhibit "D".

[5] See the Referee's valuation attached as Exhibit "A".  One of the Referees, Ms. Elissa Ruyon, is a certified appraiser and prepared the valuation on behalf of the Referees.

[6] According to the Referees, the property has an approximate value of $53,500,000; divided by 11, that amounts to approximately $4,863,636.33 per remaindermen.  (See, June 12, 2007 report, attached as Exhibit "A".)

[7] The Trust presented testimony of Mr. Linwood Gilbert, a Florida licensed appraiser. Mr. Gilbert testified that he was granted a temporary license to conduct the  appraisal of the Maho Bay Estate and that this was his first independent appraisal of property on St. John.  He

Kean, et al v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 8 of 11

appraiser hired by the Trust, testified that only approximately ± 191 acres of the 419.5 acres are

buildable and of the ± 191 buildable acres,[8] the Nelsons are slated to receive 42 acres of

developable land, far exceeding their equitable share of 17.36 developable acres.  This, the Trust

argues, represents  80% of the total amount of buildable land, a percentage that is inequitable vis-

a-vis the other remaindermen.  This assertion must surprise the Nelsons, whose objection is

completely to the contrary.

        In an appraisal prepared by Mr. Gilbert dated November 17, 2007, Mr. Gilbert stated that

he inspected/appraised and valued the property based on a visit to the property on October 22,

2006.[9]  Mr. Gilbert appraised the ±419 acres at $81,350,000 in retail prices with a 1/11th share

valued at $7,395,455 and with a present value of the property valued at $41,400,000 and a 1/11th

share valued at $3,763,636.  However, Mr. Gilbert, in his testimony, acknowledged Ms.

Runyon's superior knowledge of the Virgin Islands, and,  particularly, the St. John real estate

market and readily conceded  that he did not disagree with her assigned value of the property

allocated to the Nelsons.  Nonetheless, he further testified that he would have to conduct further

analysis of the property based on Harry Gauriloff's survey to determine whether the Trust has

---

further testified that the temporary license allowed him to conduct the appraisal for the Maho Bay
property only and that he conducted the appraisal in the Fall of 2006.  While he is a person of
some attainment, Mr. Gilbert is of limited experience in the Virgin Islands.

    [8] In Mr. Gilbert's addendum dated June 22, 2007, he indicates that  40% of the property is
relatively steep, leaving 250 acres that are more readily developable.

    [9] Appraisal attached as Exhibit "E".

Kean, et al  v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 9 of 11

been allocated its fair portion of the property. [10]  Indeed,  the overall value of the property is of

little consequence bearing in mind that the task is to fairly divide the property into 1/11 shares.

The Trust questions the Referees' report because Ms. Runyon's valuation of the property

is based in part on St. Thomas sales and argues that the valuation is not a true valuation because

she used stale data and even though she attempted to "bring the numbers forward", the problem

was not cured.  Essentially,  the Trust argues that the Nelsons share as valued,  and the acreage of

developable land allocated to them, exceed their equitable 1/11th interest.

The National Park has not filed written objections to the Referees' report.  However,

although the Park recommended that the Court accept the report, it did note that the property

allocated to the Nelsons is valued in excess of the Nelsons' 1/11th share.

The Court finds that the Referees partitioned the property in accordance with the mandate

of title 28 Virgin Islands Code, section 459.  Notwithstanding that the Trust and the Nelsons do

not accept the Referees' report, the Court finds that the partition represents a fair and equitable

partition of the property as it relates to the quality and quantity.  *Hartman v. Hartman*, 12 V.I.142

(D.V. I. 1975).

With the exception of the request for six acres on Mamey Peak, the Nelsons, for the most

part, received what  they requested, including the 26.33 acre parcel which is believed to be a

prime site for group dwelling development. As stated above, in their June 25, 2007 pleading, the

Nelsons requested six acres in the Mamey Peak area and, to compensate, the Nelsons requested a

_____

[10]No valuation has been performed on the property allocated to the Park and to the Trust.

Kean, et al  v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 10 of 11

reduction of the 26.33 parcel to 19.5 acres.[11]  On the other hand, the Trust's primary objection to

the report is the Referees did not conduct a formal appraisal of the property and that  the property

allocated to the Nelsons exceeds their fair and equitable 1/11th share.

      The Court finds the valuation method used by the Referees to determine the property's

value and the value of the Nelsons allocation acceptable.  This is a task which could not be

conducted with mathematical precision, and by necessity, the values ascribed are approximations.

There will be some remaining questions about such subjective conditions as location and view.

Through and through negotiation and allocation the Referees have achieved a remarkably fair

result.  The emphasis should be on the equitable partition, since without the expense of a formal

survey and appraisal, the Referees have sought to achieve an equitable division.  Further, the

Court is comfortable in accepting the valuation of the Referees because one of the Referees, Ms.

Elissa Ruynon, is a certified appraiser in the Virgin Islands, who lives on St. John and has

appraised properties throughout the Virgin Islands for many years.  The Court also finds that the

Referees allocated lands that represent the different terrain of the property equitably among the

parties.

      Finally, section 460 provides that the Court may confirm or set aside the Referees' report

in whole or in part and,  if necessary, appoint new referees.  If the report is confirmed, then it

becomes binding on all parties who have an interest in the property.

      The premises considered, it is hereby **RECOMMENDED**, that the Referees' report be

_____

[11]  See Exhibit "C".

Kean, et al  v. Adler, et al.
Civ. No.1998/176
Report and Recommendation of U.S. Magistrate Judge, Geoffrey W. Barnard
Page 11 of 11

confirmed in all respects and that the subject property be partitioned in accordance therewith.

**DATED:** September __25__ , 2007

_____
**GEOFFREY W. BARNARD**
**U.S. Magistrate Judge**

**ATTEST:**
**WILFREDO F. MORALES**
Clerk of the Court

By:_____
        Deputy Clerk

**Copies to:**

A. J. Weiss, Esq.,
Joycely Hewlett, Esq., AUSA
Jay Isherwood, Esq.,
Nelinda and Valentino Nelson
Claudette Donovan
Olga Schneider
Sharline L. Rogers, Esq.